IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNIFER MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-01007-O-BP |
| | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are the United States Magistrate Judge's Findings, Conclusions, and Recommendation (ECF No. 31), issued September 15, 2022; Plaintiff's Objection (ECF No. 32), filed September 29, 2022; Plaintiff's Notice of Supplemental Authority (ECF No. 41), filed February 1, 2023; Defendant's Response (ECF No. 42), filed February 6, 2023; Defendant's Unopposed Motion for Leave to File Supplemental Authority (ECF No. 43), filed March 9, 2023; Plaintiff's Unopposed Motion for Leave to Respond (ECF No. 44), filed March 28, 2023; Plaintiff's Unopposed Motion for Leave to File Notice of Supplemental Authority (ECF No. 45), filed May 4, 2023; and Defendant's Unopposed Motion for Leave to File Supplemental Authority (ECF No. 46), filed May 5, 2023.

For good cause and because they are unopposed, the Court **GRANTS** the parties' motions to offer and respond to notices of supplemental authority (ECF Nos. 43–46). The Court has reviewed all matters of record in this case, including the Findings, Conclusions, and Recommendation of the Magistrate Judge and Plaintiff's objection thereto, as well as the parties' briefing on supplemental authorities and applicable law, in accordance with 28 U.S.C. § 636(b)(1). The dispositive question before the Court is whether § 3346(a)(2) of the Federal Vacancies Reform

1

Act functions as a spring-back or a tolling provision on terms of acting service for executive branch officer vacancies. Because the Court holds that the statute functions as a tolling provision, and that the actions taken by Acting Commissioner Nancy Berryhill in July 2018 were therefore unlawful, the undersigned District Judge **DECLINES to adopt** the Findings, Conclusions, and Recommendation of the Magistrate Judge as those of this Court, **VACATES** the Commissioner's decision, and **REMANDS** Miller's case to the agency for rehearing.

## I.      FACTUAL & PROCEDURAL BACKGROUND

In August 2019, Plaintiff Jennifer Miller sought Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, claiming entitlement to disability benefits because she cannot work on account of her numerous chronic medical conditions. Her DIB application was rejected by the Social Security Administration ("SSA") at every stage of review: first, by the Commissioner of Social Security, both initially and upon reconsideration on grounds that Miller is not disabled; next, upon a requested rehearing by SSA Administrative Law Judge ("ALJ") Sherrill LaPrade Carvalho; and finally, by the SSA Appeals Council, which denied discretionary review. Having exhausted her administrative remedies, Miller appealed to this Court for review of the Commissioner's ultimate decision.[1] 42 U.S.C. § 405(g). She attacks the Commissioner's decision on several grounds: that ALJ Carvalho failed to properly evaluate the severity of Miller's chronic regional pain syndrome and reflex dystrophy syndrome as required; that the purported Acting Commissioner, Nancy Berryhill, lacked statutory authority under the Federal Vacancies Reform Act ("FVRA") to ratify the appointments of the agency's ALJs in 2018, which presents an Appointments Clause problem; and, because of improper restrictions on the President's power

---

[1] Compl., ECF No. 1. The undisputed facts of this case are taken from Plaintiff's Complaint (ECF No. 1), Plaintiff's Brief on Appeal (ECF No. 11), and Plaintiff's Objection (ECF No. 32) unless otherwise noted.

to remove the Commissioner, that Miller was denied a constitutionally valid adjudicatory proceeding before the SSA.[2]

On September 15, 2022, the United States Magistrate Judge issued his Findings, Conclusions, and Recommendation ("FCR"), recommending that the undersigned affirm the Commissioner's denial of Plaintiff's DIB application.[3] Miller objects to the Magistrate Judge's recommendation on grounds that (1) the FCR errs by rejecting Miller's Appointments Clause claim, and (2) that the FCR improperly excuses the ALJ's errors in evaluating the severity of Miller's claimed medical impairments.[4] Because Miller's first objection is dispositive, the Court does not address the second.

## II.  LEGAL BACKGROUND

### a.  Appointments Clause

The U.S. Constitution requires that certain officers of the United States—"principal" officers—be nominated and appointed by the President, along with the advice and consent of the Senate. U.S. CONST. art. II, § 2, cl. 2; *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021). It also permits Congress, in their discretion, to authorize the President alone, Courts of Law, or Heads of Departments to independently appoint "inferior" officers without the Senate's participation. U.S. CONST. art. II, § 2, cl. 2. This nomination, appointment, and confirmation procedure exists to promote political accountability and preserve the "clear and effective chain of command" from the Chief Executive down to the "thousands of officers [who] wield executive power on behalf of the President in the name of the United States." *Arthrex*, 141 S. Ct. at 1979 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010)). Recently,

---

[2] *See generally* Pl.'s Br. on Appeal, ECF No. 11.
[3] *See generally* FCR, ECF No. 31.
[4] *See generally* Pl.'s Objection, ECF No. 32.

the Supreme Court clarified that ALJs are "officers" of the United States and must therefore be appointed in accordance with Article II. *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018).

### b. Federal Vacancies Reform Act of 1998

While "[it] is a critical structural safeguard of the constitutional scheme," Article II's prescribed Presidential appointment and Senate confirmation process can move slowly. *NLRB v. SW General, Inc.*, 580 U.S. 288, 293–94 (2017) (cleaned up). Thus, Congress enacted the FVRA, 5 U.S.C. §§ 3345–3349, which protects the Senate's confirmation prerogative while promoting efficiency in the staffing of offices of the Executive branch. *See* MORTON ROSENBERG, CONG. RSCH. SERV., NO. 98-892A, THE NEW VACANCIES ACT: CONGRESS ACTS TO PROTECT THE SENATE'S CONFIRMATION PREROGATIVE 1, 6, 10 (1998). Since the first Presidential term, "Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS[5] office without first obtaining Senate approval." *NLRB*, 580 U.S. at 294. The FVRA—the most recent, and exclusive, codification of that historic Congressional authorization—sets out the President's power to appoint acting officers to fill vacant offices, temporarily and subject to specified time constraints, during the pendency of the formal nomination and confirmation process for that office. 5 U.S.C. §§ 3345–3346; *id.* § 3347 (noting that, with limited exception, "[s]ections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office of an Executive agency"); *NLRB*, 580 U.S. at 295.

5 U.S.C. § 3345(a) specifies the three categories of officials who may serve in an acting capacity. By default, the first assistant to a PAS officer automatically and mandatorily assumes an acting role if a PAS officer "dies, resigns, or is otherwise unable to perform the functions and

---

[5] Executive offices requiring Presidential appointment and Senate confirmation are known as "PAS" offices. *NLRB*, 580 U.S. at 292.

duties of the office." 5 U.S.C. § 3345(a)(1). However, the President may select someone other than the first assistant to serve as an alternate acting officer:

> Subsection (a)(2) provides that "notwithstanding paragraph (1)," the President "may direct a person" who already serves in a PAS office to "perform the functions and duties of the vacant office temporarily in an acting capacity." Subsection (a)(3) adds that "notwithstanding paragraph (1)," the President "may direct" a person to perform acting duties if the person served in a senior position in the relevant agency for at least 90 days in the 365-day period preceding the vacancy.

*NLRB*, 580 U.S. at 295–96. Whether the acting officer assumes that role by default under subsection (a)(1) or by the President's alternate appointment, the acting officer's service is always "subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1)–(3). Section 3346's time limitations require that:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—
>
> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.
>
> (b)
>
> (1) If the first nomination for the office rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.
>
> (2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve—
>
> (A) until the second nomination is confirmed; or
>
> (B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.
>
> (c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

*Id.* § 3346. "If the *last* day of any 210-day period under section 3346 is a day on which the Senate is not in session, the second day the Senate is next in session and receiving nominations shall be deemed to be the last day of such period." *Id.* §3348(c) (emphasis added). Finally, § 3348 provides that:

> (b) Unless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347, if an officer of an Executive agency . . . whose appointment to office required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—
>
> (1) the office shall remain vacant; and
>
> (2) in the case of an office other than the office of the head of an Executive agency . . . , only the head of such Executive agency may perform any function or duty of such office.

*Id.* § 3348(b). Finally, any action taken by a Government official not in compliance with these statutory requirements "shall have no force or effect" and "may not be ratified." *Id.* § 3348(d). Thus, taken together, these "sections of the FVRA establish time limits on acting service and [impose] penalties for noncompliance." *NLRB*, 580 U.S. at 296.

### c. Social Security Administration & Acting Commissioner Nancy Berryhill

The Social Security Administration is an independent agency within the executive branch and is headed by the Commissioner of Social Security, who must be appointed by the President and confirmed by the Senate. 42 U.S.C. §§ 901(a), 902(a)(1). On January 20, 2017, when President Trump took office and the SSA's Deputy Commissioner resigned—leaving the SSA without a head-of-department—Deputy Commissioner for Operations ("DCO") Nancy Berryhill assumed the role of Acting Commissioner in keeping with the FVRA and as provided for in a then-standing Presidential order-of-succession should there be dual Commissioner and Deputy Commissioner

6

vacancies at the SSA.[6] When Berryhill's 210-day term of acting service expired on November 16, 2017, she remained in the position, only resuming her former position as DCO after the Government Accountability Office ("GAO") reported to the President in March 2018 that her continuing service as Acting Commissioner violated the FVRA.[7]

On April 17, 2018, President Trump nominated Andrew Saul as Commissioner of Social Security. Upon submission of the nomination, Berryhill returned to the role of Acting Commissioner until Saul was sworn in on June 17, 2019.[8] During her second term of service in July 2018—and after the Supreme Court's ruling in *Lucia v. SEC*, 138 S. Ct. 2044 (2018) that ALJs are "officers" of the United States and must therefore be appointed in accordance with Article II—Berryhill purported to ratify all prior SSA ALJ's appointments as her own. *Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021). Until that time, lower level SSA staff had appointed all SSA ALJs, including ALJ Carvalho, who subsequently denied Miller's application for disability benefits. *Id.*

### III.   LEGAL STANDARDS

When a party objects to a magistrate judge's Findings, Conclusions, and Recommendation, the Court reviews the magistrate's proposed findings and recommendations *de novo*. 28 U.S.C. § 636(b)(1)(C). On the merits, the Court reviews the Commissioner's decision "to determine whether it is supported by substantial evidence on the record as a whole and whether the Secretary applied the proper legal standard." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When a litigant raises an Appointments Clause challenge regarding the appointment of the officer that

---

[6] *See generally* Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. 96337 (Dec. 23, 2016).
[7] *See* U.S. GOV'T ACCOUNTABILITY OFF., B-329853, VIOLATION OF THE TIME LIMIT IMPOSED BY THE FEDERAL VACANCIES REFORM ACT OF 1998—COMMISSIONER, SOCIAL SECURITY ADMINISTRATION (Mar. 6, 2018) ("GAO Report"); *see* Extension of Expiration Dates for Two Body System Listings, 83 Fed. Reg. 13862 (Apr. 2, 2018) (indicating, by signature, that Berryhill had resumed her position as DCO with the SSA).
[8] Def.'s Resp. 5, ECF No. 16.

adjudicates his case, he is "entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182–83 (1995). And as the Supreme Court has instructed, the "appropriate" remedy for an adjudication that runs afoul of the Appointments Clause is rehearing before a different and properly appointed agency official. *Lucia v. SEC*, 138 S. Ct. 2044, 2055, 2055 n.5 (2018).

## IV.  ANALYSIS

The parties agree that the SSA lacked a valid Acting Commissioner between the expiration of Nancy Berryhill's 210-day term of acting service on November 17, 2017 and Andrew Saul's nomination as Commissioner on April 17, 2018. However, they dispute whether Berryhill's subsequent return to acting service in April 2018 was permissible under the FVRA and, as a result, whether her July 2018 ratification of ALJ Carvalho's appointment was effective.

The crux of this case is thus whether Berryhill was validly serving as Acting Commissioner at the time she ratified the ALJ appointments. To resolve that question, the Court must decide whether § 3346(a)(2) of the FVRA functions as a spring-back or a tolling provision.[9] The United States contends the subsection is a spring-back, meaning Berryhill could properly resume acting service "during the pendency of a first or second nomination even when that nomination is submitted after the initial 210-day period for acting service [had] expired."[10] Interpreted this way, an acting officer could theoretically serve (i) for an initial 210-day term, (ii) during a first or second nomination and for 210-days after, (iii) or both. By contrast, Miller claims § 3346(a)(2) is a tolling provision, meaning Berryhill's acting service permanently expired on November 16, 2017 because

---

[9] The Magistrate Judge concluded that § 3346(a)(2) operates as a spring-back. FCR 12, ECF No. 31. However, the FCR did not provide independent interpretive analysis of the provision and relied on precedents that themselves did not engage in substantive statutory interpretation of the question at hand. For this reason, and the reasons set out in this opinion, the Court declines to adopt the Magistrate's recommendation on this point.

[10] Def.'s Resp. 5, ECF No. 16.

no first or second nomination occurred *before* the expiration of the initial 210-day time limit.[11] Relying on traditional tools of statutory construction and confirmation from the Supreme Court, the Court holds that § 3346(a)(2) is a tolling provision.

### a. The Meaning of "Or" in § 3346(a)

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). This interpretive examination entails "follow[ing] the plain and unambiguous meaning of the statutory language, interpreting undefined terms according to their ordinary and natural meaning and the overall policies and objectives of the statute. In determining the ordinary meaning of terms, dictionaries are often a principal source." *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) (cleaned up). If this initial interpretive "examination yields a clear answer," as it does here, that ends the court's inquiry. *Argus Leader*, 139 S. Ct. at 2364.

Whether Berryhill was validly serving in July 2018 ultimately turns on the meaning of the word "or."[12] The statute provides that the qualified acting officer may serve "for no longer than 210 days beginning on the date the vacancy occurs; **or** . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." *Id.* § 3346(a)(1)–(2) (emphasis added).

---

[11] Pl.'s Objection 4–9, ECF No. 32.
[12] The Court does not find Plaintiff's and other courts' emphasis on § 3346's use of the present participle "serving" as instructive in resolving the parties' dispute as Plaintiff suggests. Even though the language "the person **serving** . . . may serve" indicates present and ongoing service, that does not itself transform subsection (a)(2) into a tolling statute. *Id.* § 3346(a) (emphasis added). Indeed, the use of the present tense is fairly read as a reference to those identified in § 3345 as qualified to serve in the acting capacity. And such person is "serving" as an acting officer immediately upon automatic assumption of that office (per § 3345(a)(1)) or upon appointment by the President (per § 3345(a)(2)–(3)), whether that service occurs during the 210-day post-vacancy window or during the—potentially much longer—pendency of a first or second nomination.

9

The question is whether "or," which the parties agree is used in its disjunctive sense,[13] should be read exclusively (Miller's position) or inclusively (the Government's position). The Court agrees with Miller. "In its inclusive sense, 'or' means 'A or B, or both.' In its exclusive sense, 'or' means 'A or B, but not both.'" *B-50.com, LLC v. InfoSync Servs. LLC*, No. 3:10-CV-1994-D, 2014 WL 285096, at *6 (N.D. Tex. Jan. 27, 2014) (Fitzwater, J.). And whether "or" is meant in the inclusive or exclusive sense depends upon the context. *See id.* at *6–7. Courts "do not . . . construe statutory phrases in isolation; [they] read statutes as a whole." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). So rather than attempt to divine the meaning of "or" by fixating on its two letters standing alone, the Court starts by reading the word within its broader statutory context.

Here, "or" connects subsections (a)(1) and (a)(2). When read together, it is clear "the structure of the two clauses is not 'A or B' but 'A or, once X occurs, then B.'" *Foster v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00290-PHX-JAT, 2023 WL 2661608, at *7 (D. Ariz. Mar. 28, 2023). Thus, the word's immediate statutory context suggests that "or" should be read in an exclusive sense. In other words, § 3346(a), read as a whole, identifies alternate, but mutually exclusive, ways of calculating the time limitation imposed on an acting officer's service. Even § 3346's heading, which uses the singular "time limitation," rather than plural "limitations," provides a clue that the statute should be read to identify *one* period of acting service, not multiple. Had Congress wished to clearly convey inclusive options for terms of acting service, it could have used "and" or, as it has done throughout the U.S. Code, "one or both." *See, e.g.*, 21 U.S.C. § 353d(b) ("the Secretary may do one or both of the following"); 16 U.S.C. § 494 ("owners . . .

---

[13] Pl.'s Resp. to Def.'s Supp. Auth. 3, ECF No. 44 ("Section 3346(a)'s disjunctive 'or' means that Berryhill could serve 'for no longer than 210 days' (Option A) or during a nomination (Option B)—not both."); Def.'s Resp. 12, ECF No. 16 (noting the statute's use of "or" is meant to carry its "ordinary disjunctive usage").

shall be reimbursed therefor only in one or both of the following ways"); 17 U.S.C. § 512(j)(1)(B) ("the court may only grant injunctive relief in one or both of the following forms"); 20 U.S.C. § 1035(e) ("[a]n eligible entity . . . is authorized to use such grant to carry out one or both of the following activities"). Thus, the Court reads § 3346(a) to mean an acting officer may serve for <u>210 days</u> **or** for <u>an extended pending nomination period</u>, but **not both**.

### b. Section 3346(a)(2) as a Tolling Provision

That § 3346's subsections (a)(1) and (a)(2) are mutually exclusive does not mean they are unrelated. This brings the Court to the parties' dispute about whether § 3346(a)(2) is a spring-back or a tolling provision. Based on its prior reasoning, interpretation of the provision in view of its place within the statute as a whole, and Supreme Court guidance, the Court holds that § 3346(a)(2) is a tolling statute.

Because subsection (a) identifies alternative and mutually exclusive lengths of acting service, § 3346(a)(2) cannot function as a spring-back. If a proper reading of the disjunctive "or" in its exclusive sense means an acting officer cannot serve for two *separate* terms, the statute cannot provide a "spring-back" into a prior term of service. Other sections of the FVRA also indicate that § 3346(a)(2) should be read as a tolling provision. When interpreting a single statutory provision, courts must read those provisions contextually "and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). To this end, a court's interpretation should "fit, if possible, all parts [of the statute] into a harmonious whole." *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959). Reading § 3346(a)(2) as a tolling provision makes sense of § 3348(c) of the FVRA, which provides that "[i]f the last day of any 210-day period under section 3346 is a day on which the Senate is not in session, the second day the Senate is next in session and receiving nominations shall be deemed to be the last day of such

11

period." 5 U.S.C. § 3348(c). As Judge Teilborg noted in *Foster v. Commissioner of Social Security Administration*:

> This provision extends the end of the two-hundred-and-ten-day period so that it can end *after* the Senate has had an opportunity to receive a nomination from the President. It is designed to ensure that a nomination can be made during the initial acting service period. This provision only makes sense if § 3346(a)(2) is a tolling provision that can only be taken advantage of if the President nominates a candidate during the two-hundred-and-ten-day period. . . . If an eligible individual can reassume the role of acting officer any time the President submits a nomination, then there would be absolutely no need for the initial period to be extended.

No. CV-22-00290-PHX-JAT, 2023 WL 2661608, at *9 (D. Ariz. Mar. 28, 2023). This Court agrees.

Because the statute's meaning is clear upon application of traditional statutory tools of interpretation, the Court need not consider any extra-textual sources. *NLRB*, 580 U.S. at 305; *see also Samantar*, 560 U.S. at 326 (Scalia, J., concurring) (suggesting that judges should consider using legislative history only when, without it, the court would reach a different result). However, a brief acknowledgment of Supreme Court commentary on the FVRA is helpful because it confirms this Court's reading of §3346(a)(2) as a tolling provision. In *NLRB v. SW General, Inc.*, the Supreme Court discussed the FVRA at length, and § 3346 in particular, noting that:

> the statute permits acting service for "210 days beginning on the date the vacancy occurs"; tolls that time limitation while a nomination is pending; and starts a new 210-day clock if the nomination is "rejected . . ., withdrawn, or returned." §§ 346(a)-(b)(1). Upon a second nomination, the time limit tolls once more, and an acting officer can serve an additional 210 days if the second nomination proves unsuccessful. § 3346(b)(2). The FVRA ensures compliance by providing that, in general, "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect." § 3348(d).

*NLRB*, 580 U.S. at 296.

The Government asks this Court to disregard the Supreme Court's commentary as non-binding dicta, but lower courts "are generally bound by Supreme Court dicta," particularly when—

as it is here—the dicta is "recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016); *see also United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980) ("We are not bound by dicta, even of our own court. . . . Dicta of the Supreme Court are, of course, another matter."); *McCoy v. Mass. Ins. Of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("We think that federal [] courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement."); *Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1322 (11th Cir. 2021) ("Supreme Court dicta is not something to be lightly cast aside."). Despite the Government's effort to minimize the Supreme Court's recent dicta in *NLRB* as a "stray reference" to § 3346, this Court views it differently.[14] And though the issue in *NLRB* related to the interpretation of § 3345(a), the Supreme Court's opinion discussed at length the historic problem of long-unfilled PAS office vacancies and Congress's successive responses to that problem, which ultimately culminated in the enactment of the FVRA. *NLRB*, 580 U.S. at 294–97. Within that context, the Supreme Court commented on § 3346 and its function as a tolling provision. *Id.* at 296. This is precisely the sort of dicta that cannot be lightly cast aside.

\*   \*   \*   \*

Given the Court's conclusions that § 3346(a)(2) is properly read as a tolling provision, Berryhill's second term of service as Acting Commissioner was in violation of the FVRA because the initial 210-day time limit expired months before the President submitted Andrew Saul's nomination to the Senate. "Statutory tolling cannot revive a limitations period that has already ended; it can only serve to pause a clock that has not already run." *Acosta v. Hill*, Case No. 19CV1190-H(KSC), 2019 WL 6218777, at \*3 (S.D. Cal. Nov. 21, 2019), adopting report and

---

[14] Hr'g Tr. 41:19–42:4, ECF No. 40.

recommendation, 2020 WL 107098 (S.D. Cal. Jan. 9, 2020). Because she acted without legitimate statutory authority, Berryhill's attempted ratification of the SSA ALJ appointments in July 2018, including that of ALJ Carvalho, has "no force or effect." § 3348(d). And because ALJ Carvalho was not appointed by a properly serving Acting Commissioner—in contravention of the Appointments Clause—ALJ Carvalho's adjudication of Miller's DIB application was equally illegitimate.

The appropriate remedy for this Appointments Clause violation is clear. Miller is entitled to a rehearing of her DIB application before a different and properly appointed SSA ALJ. *Lucia*, 138 S. Ct. at 2055. As was true of the ALJ at issue in *Lucia*, Judge Carvalho "heard and decided [Miller's] case without the kind of appointment the Clause requires" because she was not properly appointed by a validly serving SSA head-of-department. *Id.* And importantly, Miller does not need to show that ALJ Carvalho's unconstitutional appointment caused Miller's particular harm because, unlike Removal Clause violations that can be cured post hoc, an officer who has not been properly appointed "lack[s] constitutional authority [at the outset such] that their actions [are] void *ab initio*." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Indeed, ALJ Carvalho could not have exercised adjudicatory power she never lawfully possessed. *Id.* at 1788. As the Supreme Court has indicated, Miller is therefore entitled to a new disability benefits hearing. And because the Court holds that reversal and remand to the SSA is justified based solely on Miller's Appointments Clause argument, the Court need not address her remaining objection regarding ALJ's Carvalho's failure to properly consider the severity of Miller's medical impairments.[15]

---

[15] As a final matter, the Court notes that the Government has not, in the alternative, raised any challenge to the constitutionality of the FVRA should the Court interpret the statute as a tolling provision (e.g., arguing that such an interpretation would present a separation of powers problem by infringing on the President's executive power). Therefore, the argument is forfeited. *See Feds for Med. Freedom v. Biden*, 63 F.4th 366, 392 (5th Cir. 2023) (Ho, J., concurring).

## V. CONCLUSION

For the reasons discussed, the Commissioner's decision with respect to Jennifer Miller's disability benefits application is **VACATED** and Plaintiff's case is **REMANDED** to the Social Security Administration for adjudication before a properly appointed Administrative Law Judge other than Judge Carvalho. Separate final judgment shall issue.

**SO ORDERED** this **5th day** of **June, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**